versus Shinn, and I would like to thank the attorneys for taking this case pro bono. That 15 includes your rebuttal time. May it please the Court. The District Court held that even if defendant's interruption of Charles Nealy's Jumu'ah prayer was motivated by anti-Muslim animus, that fact was irrelevant to the Free Exercise Clause analysis. That holding is flatly inconsistent with this Court and Supreme Court precedent in Lukumi, Masterpiece, and Fellowship of Christian Athletes, which held that government action rooted in religious hostility violates the Free Exercise Clause. Under those cases, religiously hostile, non-neutral government action doesn't just trigger strict scrutiny. It invariably fails it. Counsel, do we have to find hostility to find in favor of your client? No, Your Honor. There is also a substantial burden because Mr. Nealy was put to the coercive choice of either violating his religious beliefs by stopping his prayer or facing prison discipline. And so you see at ER 131 that he testified that it is his sincere religious belief that to stop praying while he's in the midst of prayer violates his religious beliefs. And so that's a coercive choice just the same as in Ward versus Walsh. It's the same thing as putting a prisoner to eating pork, for instance, if their religious beliefs forbid that, or obeying prison orders. And so it's the exact same thing here. And I do want to clarify that it doesn't matter that Mr. Nealy actually continued praying because in Walker versus Beard, this Court made clear that whatever choice the prisoner takes in terms of either continuing their religious practice or obeying the prison orders doesn't matter for the purposes of the substantial burden test. If you — I understand RLUIPA statutorily requires a finding of substantial burden, but I understood your brief to also be arguing that for the Free Exercise Clause, the substantiality requirement has been abrogated. If we were to agree with you for RLUIPA, do we need to reach that issue? I think that we — If we were to agree that there is a substantial burden, which is what courts have done in the past and then, therefore, does not decided whether the substantiality requirement has been abrogated in the Free Exercise context, is there a reason why we would need to reach that issue in this case? You would not need to reach that issue. But I would just, you know, urge the Court that it's quite strange to have the substantial burden analysis existing the way that it does for a number of reasons, but I think most evidently in the cases where there's a challenge to a nonneutral government action, because applying a substantial burden requirement in those cases without at least saying that the lack of neutrality itself is the substantial burden is quite in tension with the Supreme Court's and this Court's en banc cases, because in all those cases, the Court considers whether the action at issue was nonneutral and said most recently, for instance, in Kennedy v. Bremerton, that to demonstrate a Free Exercise clause violation, a Petitioner need only show that a sincere religious exercise was burdened pursuant to a nonneutral government action. Does there need to be finding of animus, though? And I think this is where some of the issues are perhaps conflated. There's — my understanding is that when there is a neutral and generally applicable policy, that is when there's essentially no exception for — regardless of whether there's a nonneutrality or not, regardless of the degree of burden. But there's then — and I think there is no — there is a concession here or an agreement on both parties' parts that there is no generally applicable policy at issue here, so we're not in that category — line of cases. And then the question really is what is the — what are the requirements to state a Free Exercise claim when the State action at issue is not a neutral and generally applicable policy? And then there, you know, reading Smith v. Washington, which everyone agrees abrogated, and our prior precedent agrees abrogated, the centrality requirement in a footnote essentially says centrality or — the burden test is centrality in another name. So I think there, then, it becomes a question in my mind whether, when we — when we recognize the abrogation of a nonneutral claim, the centrality test, that necessarily also abrogated the substantiality requirement. Yes, Your Honor. I think that it did. And I think that it's — it did because when — in Shakur v. Shishiro, for instance, like, the Court said that the sincerity test is all that determines whether a Free Exercise claim has been stated. And I think it's important to understand that the centrality analysis and the substantial burden, another way of asking that question is how important is the thing that has been burdened or been taken away. And I think you can see that really clearly here, because the District Court, in order to reach its holding, necessarily had to conclude that Mr. Neely's belief in uninterrupted prayer was less important than other beliefs, because, you know, in other cases, like, the Court has said that a belief in not eating religiously forbidden food is very important. And so ordering a prisoner to violate that belief counted as a substantial burden. And the only way to draw a distinction between those — that line of cases and the facts here are to say that Mr. Neely's belief in uninterrupted prayer is more peripheral. And that's just, you know — Okay. You're speaking pretty fast for me. Sorry. The conduct here that constitutes the burden was, what, the interruption of prayer? Yes. Well, it was — yes. It was the interruption of prayer, but it was also the manner that the interruption happened. But this happened once? It happened twice on the day of an incident. First, the prayer was interrupted because the guards believed that Mr. Neely — like, Mr. Neely had left the room when he was not supposed to, although he testified in his deposition that he had never been told not to leave the classroom. And so it was interrupted once. And at that point, Mr. Neely also testified later that Sergeant Milligan, who was one of the people who interrupted, later apologized to him, saying that she'd interrupted under false pretenses because she'd been told that he'd been disobeying orders. But that wasn't actually what happened. But it was all the same day? It was all the same day. Same prayer. Same prayer. And then — so it was interrupted once. They gave them some additional time until 140, as reflected in the incident. Excuse me. I thought that the record also contained evidence that the Juma prayer was suspended again on two other occasions in March and April of 2020, not just the one incident. Is that correct? Yes, Your Honor. I apologize. I was talking about the day of the incident. But there were certainly other additional cancellations of Juma prayer on March 27th and on April 5th. And there was also the eight-week suspension. So we're bringing claims as to both the interruption on November 22nd and the suspension. I have a question about the eight-week suspension. It appears that it is correct that the remaining defendants did not participate in making that eight-week suspension decision. But if I'm reading it correctly, you are not contending on appeal that there was an error in dismissing the other defendant who was responsible. Am I reading that correctly? We are contending that there was an error in dismissing Deputy Warden Carr. Where is that in your opening brief? We didn't raise that in our opening brief. Well, then, you didn't raise it as far as our jurisprudence is concerned. Well, we raised it as a response to the defendant's argument in their red brief because they stated — Well, counsel, well, normally, we don't consider issues not distinctly argued in the opening brief. That is our policy and our practice. Yes. Well, this Court has the discretion to consider issues that do not — where it would not prejudice the defendants. And here we raise Deputy Warden Carr because the defendants have attempted to shift liability from Chaplain Willis by explicitly blaming Deputy Warden Carr in their red brief at 28. And so we raised the issue with the screening order as a response to that. And it also wouldn't prejudice Warden Carr to reverse the screening order because it was — he was screened out already, so he wasn't served, and he would have a chance below to, you know, be served and go — and give all his arguments. So we don't think that it would prejudice the defendants to reverse the screening order. But I do want to also emphasize that our argument is that Chaplain Willis was also involved in imposing the suspension. And we think that the — you know, defendants have said that there were a number of decisionmakers who were involved in making this decision, and we think a reasonable who ran the JUMA services, who was the only witness to the incident in question that led to the suspension. And also — But that doesn't mean he decided on the suspension. He may have dealt with the initial incident but have had nothing to do with the suspension. I don't understand why that follows as a matter of logic. So, Your Honor, I think that that context is just important to reviewing the record evidence that suggests that he was involved in the suspension or that a reasonable jury could so conclude. So, for instance, at records of record 38, he states, in consultation with Chaplain Willis, JUMA — sorry, excuse me — in consultation with Chaplain Henry, JUMA services are scheduled to resume on January 24th, 2020. And then he goes on to say, in November — on November 22nd, this office received notification that inmates were not following directives. And so I think from there, a reasonable jury could infer that he was involved in a consultation deciding how long the suspension would persist, and clearly also bringing in the reason that the suspension was imposed in the first place. And then if you look at excerpts of record 55, there's an email on the day of the incident from Chaplain Henry when he says that because the office received the notice of the inmates not — you know, refusing directives, that services would be deactivated and that we would discuss — we will discuss and review the status of services in a couple of weeks. And so I think reading those two pieces of documentary evidence together, a jury could easily conclude that the discussion that Chaplain Henry referenced at ER 55 was, in fact, the consultation with Chaplain Willis referenced in ER 38. And at this stage in the summary judgment record, I mean, you know, the only way really to accept defendants' argument is to draw all inferences in their favor. But at this stage of the proceeding, the inferences should be drawn in Mr. Neely's favor. And that's their only argument on the suspension. Also, they've not provided any penological interest to justify it. So, you know, if you agree with us that there is at least a reasonable jury could conclude that Chaplain Willis was involved in the decision, that then that would be — they've conceded all the rest of the argument. And I also want to emphasize that the district court made a legal error in emphasizing that Chaplain Willis had to be the one person who made the decision to impose the suspension, because the way that the Section 1983 liability precedent works in this court is that it's not that he needed to be the initial decision-maker or the prime mover of this incident. He just had to participate in the constitutional violation as more than a mere bystander. And I think that given the record evidence and his, you know, his role in the prison as well, it's quite easy to conclude that he did. I also think a jury could conclude as well that he was — had some interest in imposing the suspension because of the evidence of animus in the record. So you see it, like excerpts of Record 121, that he responded to the violent ICS interruption of Mr. Neely's prayer by saying, I was very inspired. And I think it's very hard to understand why anyone would react to a violent incident like that in that way unless it was some sort of expression of animus. And there's also the fact that he called them terrorists, another expression of animus. So I think it's — that's part of the context as well, that if not only was he in these meetings, but he seemed to have an interest in — in, like, you know, stopping the Muslim prisoners from praying. Thank you. Would you like to reserve the rest of your time? Yes. Thank you. Good morning, Your Honors. Nancy Davis here on behalf of the defendants, appellees, Chaplain Willis, Sergeant Milligan, and Officer Hall. I want to start with the issue that my colleague discussed last, and that's the alleged claim, or their claim, that Chaplain Willis was allegedly involved in the decision to suspend the subsequent prayer sessions. That is a flat misstatement of the record. The only thing that this Court really needs to look at is the actual document in question, which appears at — it's a letter — it's a response to Mr. Neely's letter dated January 17th, 2020. And it indicates that he had checked with the other chaplain and that the prayer services were to resume the next week. So they're relying on that letter that is post-dated well after a number of the suspensions have already occurred to suggest that somehow Chaplain Willis was involved in the decision. That's not what that letter shows. Additionally — What is your response to the argument that we have discretion to consider the dismissal of the person responsible and that that is an appropriate exercise of our discretion? I think that my colleague is incorrect on that, Your Honor. I would point out that they did not raise that, as the Court correctly noted, in their opening brief. Yes, but their argument is that notwithstanding that, we have discretion to consider an issue that doesn't prejudice the other party when it is raised too late. In other words, it's not a jurisdictional problem. It's a prudential problem. My response to that, Your Honor, respectfully, is that defendant is not a party to this action. I don't represent them. I think there's ethical concerns with me asserting positions for somebody I don't represent and who's not a party to the action. I can state that the record below indicates neither at the summary judgment stage nor up until just recently did they ever attempt to raise that argument. And so I — So you're not actually opposing their argument. You're not responding to it because you don't represent the individual. Is that what I'm understanding your answer to mean? I think it would be inappropriate, Your Honor, for me to make a legal argument for a client that I don't represent. Okay. I think that there is sufficient evidence in the record for this court to find that it would not be appropriate to do that. With respect to the suspension of the group prayer sessions for the time period after the November 22, 2019 incident, the email at issue establishes that it was not Chaplain Willis that had done it. The decision was made on that day by another chaplain in consultation with the administrator, and that was an email that was sent out from somebody who's not a party to this action. Moving on to the November 22, 2019 issue, which I think takes up the bulk of the briefing and the argument in this case, this circuit in Conel v. Leiter and in subsequent decisions requires a substantial burden analysis. Well, why isn't this a substantial burden? I mean, it turns out that in my religion it doesn't really much matter if you're interrupted, but that's irrelevant, and the only evidence we have here is that it is extremely important to have uninterrupted prayer and that to be interrupted is substantially burdensome and against the religion. Certainly, Your Honors. I would start with the concept that Mr. Neely is incarcerated, and so while inmates do have a First Amendment right to freely exercise their religious beliefs, including Mr. Neely, that comes with some necessary restrictions. That comes at the next step of the analysis. Here, the only question is whether a free exercise claim was even stated. If there is one that's stated, then you have the opportunity to argue that the interruption was justified under application of the Turner factors, which the district court never even reached. But we're asking here about just what is required to state a claim. Certainly, Your Honor, and I understand that. My point in bringing up the fact that he's incarcerated goes with the substantial burden analysis, which is his primary burden to show. Do you have any case law suggesting that that initial step is affected by the fact that he's a prisoner? Obviously, we apply Turner because he's a prisoner, but that's not the first step of the analysis. Well, there's a couple of things, Your Honor, if I may. First, I don't think that the Turner analysis necessarily applies because we're not dealing with a prison regulation or policy. What we're dealing with is one isolated incident that occurred. It was brief in time during one prayer session, and the bulk of the authority So what? I mean, his declaration is that this is against his religion, and I don't understand how you can argue with that. It's sort of like if somebody had forced him to eat a pork chop, it might have taken one minute, but it would be a substantial burden. I understand. So why isn't this a substantial burden? Yes, Your Honor, and I understand that. It is a substantial burden to Mr. Neely, and that's what he stated. The question is, is that allegation in a complaint enough to — for him to meet his in the context of a penal institution and — Well, go back to my example. Would that be a substantial burden, even if it were imposed upon an inmate and it only took two minutes or a minute, if you forced someone to eat pork who was Muslim or Jewish? I think that that probably would be, Your Honor, and I think that's enough. Why is this any different? Because, you know, we can't make a judgment that that isn't part of the requirements of Islam to have uninterrupted prayer. So why isn't it a substantial burden? I think it's a vastly different fact pattern that you've proposed, Your Honor, and I think that the weight of the authority talks about — Why do you think that, though? What is your evidence for that? What is your legal precedent for that? It seems to be that it's just sort of an ipsy-dixit of this can't possibly be that important. I think the factual evidence is the fact that it was interrupted and he was able to complete the prayer. He admits that in his deposition. But that — that begs the question as to whether interruption itself is a violation of religious tenets. That's where I sort of, I guess, lose track of your argument and what the justification is for your argument. Yes, Your Honor. There's two things that I'd like to point to. First, the case law in the Ninth Circuit and other circuits, and I would recognize that there's probably a split in the circuits on this issue, is that a brief isolated interference is not enough to constitute substantial burden. Right. I mean, our case law is also very clear that we have to define the religious belief at issue at a high level of specificity. And when we follow that precedent, the religious belief at issue is in uninterrupted prayer. So I don't think we can have a categorical rule that a brief interruption is by definition insubstantial. I would disagree, Your Honor. I think that that goes to the sincerity of the belief, which is not disputed here. The other problem, then, I think is what standard is going to apply to all other cases going forward. There has to be some method for the court, when the plaintiff bears the burden of proof, to determine as a matter of law, when there's not a factual dispute, about whether the substantial burden has been satisfied. Clearly, there are going to be plaintiffs who are always going to show that there was a burden. And the question is, is a burden enough to implicate the First Amendment, or must it be a substantial burden? And the case law out of the Ninth Circuit and other circuits is clear that it has to be a substantial burden. Well, I've looked at that case law, and it seems like we haven't squarely addressed that issue since we recognized the abrogation of the centrality test, right? The centrality test is where we first started talking about substantial burden, but it was a substantial burden on a religious belief that is a central tenet of the religion. And then we've now recognized that that requirement of proving centrality was abrogated by the Supreme Court's precedent in Smith and other cases since then. And then we have now the Second Circuit saying at the same time that the Supreme Court abrogated centrality, it also abrogated the substantial burden requirement, which so there's — I mean, I think that — and we haven't — we've repeatedly just avoided the question since then. Well, the Supreme Court in Holt v. Hobbs did not do away with a substantial burden inquiry. It had an opportunity to do so, but it did not. It and DICTA, in that opinion, it still recognized that substantial burden was an element in the religious cases. And I would also point to the third — Counsel, I don't — you know, I guess I feel like this may be another case where that distinction doesn't matter, because I'm still puzzled or uncertain about your argument about why this burden is not substantial when the only evidence in the record is that it is religiously essential to have uninterrupted prayer. And if — and we can't go behind that and say, well, gee, we don't really think that is a tenet of the religion, but there's no evidence that it isn't. And so interruption, by definition, would appear to be a substantial burden. I would point the Court to the wool serger case, which was, I believe, a Navajo inmate, and either a hair policy or a shaving policy at issue. And there, when it talked about the substantial burden analysis and the sincerity of the belief, dealt with the fact that he was forced or coerced into violating his belief to comply with the policy. And while that case is not exactly on point because it dealt with a policy and this one does not deal with a policy, the issue that we have here is Mr. Neely is in an institutional setting. There was a decision made to terminate the prayer service, per even Mr. — Well, it may have been justified, but I don't understand why it isn't a substantial burden. I mean, let's say there was a fire and they had to get everybody out. Of course, it would be justified, even though it's a substantial burden. But I don't understand why it backtracks and makes the burden insubstantial. Because, Your Honor, I think in the fire context that you're talking about, if a fire were to break out during the prayer session and they had to end the prayer service to get the inmates out for people's safety, I don't think that that's the kind of conduct that the First Amendment implicates, much like under the Fourth Amendment or the Eighth Amendment context where it's not every push or shove. But, Counsel, that is — that seems to me — I think this is a repetition of what Judge Sung was saying earlier. It sort of conflates the two parts of the inquiry. Is it a substantial burden? And if the answer is no, you win. If the answer is yes, you still can win if you can demonstrate that it was important or essential to impose that burden. But that seems to be the second step, and you're shoving it back into the first step. Well, with respect to the substantial burden, if the standard's going to be — and I think it would be a departure from what the Ninth Circuit has done, as well as other courts have done in different circuits — if the substantial burden element is met simply by alleging that whatever the act was, regardless of how brief or not, is involved, constitutes a substantial burden, then there's no analysis — that a brief interruption of any religious exercise is a substantial burden. The issue here is that the sincere religious belief is in uninterrupted prayer. Our case law is very clear that we define the religious belief issue at a high level of specificity, and then we don't question — as long as you've conceded the sincerity of the belief, we don't question it otherwise. We don't test for centrality anymore. We don't argue. We don't ask whether they can prove that it's been mandated by their religion. So once we accept that, then an interruption of a sincere belief that prayer must be uninterrupted is substantial. It is tied to the nature of the belief at issue. Not a categorical, anyone who believes in prayer can't be interrupted, even briefly. I understand that, Your Honor. And I guess my response to that, I would again go back to we're talking about a violation of the First Amendment and what type of actions constitute or give rise to the level of a constitutional violation. And I don't mean this to be insulting to Mr. Neely or to his religious beliefs or to this Court, but if the standard's going to be that the allegation is, as he has done, that there was a 30-second interruption on one occasion, can implicate the First Amendment and give rise to that, I think that that creates potentially a problem for all the courts and opens the floodgates to litigation. Well, you still get the opportunity to defend the actions under the Turner test. Well, correct, Your Honor, except again, I don't know that the Turner test is actually appropriate. Well, we've applied it to cases involving policies and discretionary acts, so I'm not sure that Turner. I mean, I think it benefits you to say that we reached Turner no matter what. I think the Supreme Court has been clear that when a prisoner is alleging their claim is any violation of their constitutional right, with a very narrow exception, you know, then once they meet their burden of stating a claim, it shifts to the prison to show that the action was justified under the Turner factors. That's correct, Your Honor. I can't disagree with that statement of the law. I see I'm about to run out of time. Is there anything else you want to say in closing? In conclusion, I would just ask that this Court uphold the decision of the District Court and affirm the grant of summary judgment. Thank you. Thank you. Your Honor, just two brief points. First of all, as we've established, there was a substantial burden here because Mr. Neely was put to a course of choice. But we would urge this Court to clarify that Shakur, in overturning the centrality requirement, also overturned the substantial burden requirement because the error that the District Court made here has been made by other courts in this circuit. And you can see that when you look at the cases cited by the defendant. For instance, in another case, Howard v. Skolnick, the Court concluded that not allowing a prisoner to fast for two days was not a substantial burden because two days was too short of a time to pose a substantial burden. And once again, the only way to conclude that is to say that fasting is a less important belief than other beliefs. So we think that the courts in this circuit would benefit from a clarification of the doctrine. Second, as to the suspension, Chaplain Willis is like — is, you know, a reasonable jury could conclude that Chaplain Willis was involved in the imposition of the suspension. And the only way to hold otherwise is to interpret the consultation letter by drawing all inferences in their favor, which is not the standard at summary judgment. But as the deputy warden Carr, my opponent does not oppose this Court using its discretion to excuse any forfeiture here. And I think — No. Yes. But just to clarify, I think that it's important to understand that when it's an appeal of a screening order, like, usually the other party would not be served and would not even appear in the appellate court to, you know, to oppose the reversal of the screening order. So the prejudice here is, like, quite different from in most cases because when a party is screened out, they're not a party also on appeal. And so there would be no prejudice to them. So it doesn't really matter whether you raise the argument in the opening brief or the reply brief. We'd urge this Court to reverse. Thank you. Thank you. All right. This matter is submitted. I thank counsel for their very helpful arguments. And also appreciate pro bono counsel appearing. Yes. It's a great assistance to the Court whenever we have pro bono lawyers willing to take on cases. I'd also like to just acknowledge the students in the audience from the University of California San Francisco Law School. Thank you. All rise.
judges: SCHROEDER, GRABER, SUNG